Tor Ekeland
Adam Elewa
Tor Ekeland, P.C.
195 Plymouth Street, 5th Floor
Brooklyn, NY 11201
Tel:  718.737.7264
Fax: 718.504.5417
Email:  tor@torekeland.com
        adam@torekeland.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN TOWERS, INC., GLOBAL TOWER ASSETS, LLC,

Plaintiffs,

v.

PILOSOFT INC., AB SERVICES LLC, WINDY APPLE TECHNOLOGIES LLC, ALEKSANDR PILOSOV a/k/a ALEX PILOSOV.

Defendants.

1:16-CV-04997 (NRB)

---

## ANSWER

Defendant Pilosoft Inc., AB Services LLC, Windy Apple Technologies LLC, Aleksandr Pilosov a/k/a Alex Pilosov ("Defendants"), by their undersigned counsel, TOR EKELAND, P.C., answer Plaintiffs American Towers, Inc. ("American Towers"), and Global Tower Assets, LLC ("Global Tower") (collectively, "Plaintiffs") Complaint as follows:

### NATURE OF THE ACTION

1. This is a breach of contract action arising out of a series of license agreements for the use of wireless communications towers.

   **Answer to No. 1:**

Paragraph 1 contains legal conclusions to which no response is required.

2. American Towers licensed the use of nine towers to Defendant Pilosoft, who later assigned these tower licenses to Defendant AB Services. American Towers consented to the assignments based on a guarantee provided to it by Defendant Windy Apple.

   **Answer to No. 2:**

   Admit that American Towers licensed the use of nine towers to Defendant Pilosoft, who later assigned these tower licenses to Defendant AB Services. Deny that American Towers consented to the assignments based on a guarantee provided to it by Defendant Windy Apple.

3. Global Tower licensed the use of a rooftop area to Defendant AB Services pursuant to a rooftop license agreement.

   **Answer to No. 3:**

   Admitted.

4. Defendants AB Services and Pilosoft then defaulted on all of these licenses by failing to pay American Towers and Global Tower the money owed under those contracts. At the same time, Defendant Windy Apple defaulted under the guarantee, by failing to cure AB Services' breach of the tower licenses.

   **Answer to No. 4:**

   Paragraph 4 contains legal conclusions to which no response is required.

5. Pilosoft, AB Services and Windy Apple are or were all owned and operated by Defendant Pilosov.

   **Answer to No. 5:**

   Admitted.

6. All Defendants are still in default under their respective contracts.

   **Answer to No. 6:**

   Paragraph 6 contains legal conclusions to which no response is required.

## PARTIES

7. Plaintiff American Towers, Inc. is a corporation formed under the laws of the state of Delaware, with its principal place of business at 116 Huntington Avenue, Boston, Massachusetts 02116. American Towers operates communications towers throughout the United States and is a wholly-owned subsidiary of American Tower Corporation, an independent owner, operator and developer of communications real estate.

    **Answer to No. 7:**

    Denies knowledge or information sufficient to form a belief as to the truth of the

    allegations contained in paragraph 7 of the Complaint.

8. Plaintiff Global Tower is a limited liability company formed under the laws of the state of Delaware, with its principal place of business at 116 Huntington Avenue, Boston, Massachusetts 02116. Global Tower assists wireless companies with locating and constructing wireless communications towers.

    **Answer to No. 8:**

    Denies knowledge or information sufficient to form a belief as to the truth of the

    allegations contained in paragraph 8 of the Complaint.

9. Upon information and belief, Defendant Pilosov is the President of Windy Apple, President and/or Owner of Pilosoft, and Managing Principal of AB Services, who, on information and belief, resides at 71 Broadway, Apt. 4J, New York, New York 10006.

    **Answer to No. 9:**

    Admitted.

10. Defendant AB Services is a Nevada limited liability company with its principal place of business at 228 Park Avenue South, Suite 92678, New York, New York 10003. Upon information and belief, the only member of AB Services is Defendant Pilosov, who resides in New York, New York.

    **Answer to No. 10:**

Admit that AB Services is a Nevada limited liability company and that the only member of AB Services is Defendant Pilosov, who resides in New York, New York. Deny that AB Services principal place of business is 228 Park Avenue South, Suite 92678, New York, New York 10003. AB Services last principal place of business is located in New Jersey.

11. Defendant Windy Apple is a Nevada limited liability company with its principal place of business at 228 Park Avenue South, Suite 92678, New York, New York 10003. Upon information and belief, the President and only member of Windy Apple is Defendant Pilosov, who resides in New York, New York.

    **Answer to No. 11:**

    Admit that Windy Apple is a Nevada limited liability company and that the only member of Windy Apple is Defendant Pilosov, who resides in New York, New York. Deny that Windy Apple's principal place of business is 228 Park Avenue South, Suite 92678, New York, New York 10003. Windy Apple's last principal place of business is located in New Jersey.

12. Defendant Pilosoft is a New York domestic business corporation that was dissolved by proclamation of the New York Secretary of State on April 27, 2011 for failure to pay franchise taxes and/or failure to file franchise tax returns. Upon information and belief, Pilosoft has not been reinstated since April 27, 2011 but has continued to operate. Upon information and belief, Pilosoft has had principal places of business at 83-60 118th Street, Suite 7G, Kew Gardens, New York 11415, 55 Broad Street, Room 29B, New York, New York 10004 and 228 Park Avenue South, New York, New York 10003. Upon information and belief, Defendant Pilosov was or still is the CEO of Pilosoft.

    **Answer to No. 12:**

Admit that Pilosoft was a New York domestic business corporation that was dissolved, that Mr. Pilosov was the CEO, and that its last principal place of business was 55 Broad Street, Room 29B, New York, New York 10004.

## JURISDICTION AND VENUE

13. The parties' citizenship is completely diverse and the amount in controversy well exceeds the sum of $75,000.00, exclusive of interest and costs. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

    **Answer to No. 13:**

    Paragraph 13 contains legal conclusions to which no response is required.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because at least one defendant resides in this district and all defendants are residents of the State of New York.

    **Answer to No. 14:**

    Paragraph 14 contains legal conclusions to which no response is required.

## FACTS

**Tower Licenses**

15. American Towers is a provider of wireless communications infrastructure, offering services to deploy and support wireless networks throughout the country.

    **Answer to No. 15:**

    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16. American Towers offers a variety of wireless infrastructure solutions, including towers, Distributed Antenna System networks, backup power systems, project management and site development services.

**Answer to No. 16:**

Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17. As part of its operations, American Towers often licenses the use of wireless communications towers it owns.

    **Answer to No. 17:**

    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18. American Towers' license agreements allow licensors to use the towers for transmitting and receiving frequencies, in exchange for, among other things, a monthly license fee.

    **Answer to No. 18:**

    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19. Between July 28, 2010 and August 9, 2010, American Towers entered into nine License Agreements (the "Tower Licenses") with Defendant Pilosoft, concerning nine different towers around the country. Pilosoft is an entity that is, or was, controlled by Defendant Pilosov, and Pilosov executed all Tower Licenses on behalf of Pilosoft.

    **Answer to No. 19:**

    Admitted.

20. Under the Tower Licenses, American Towers agreed to allow Pilosoft to use its towers in exchange for Pilosoft's payment of a monthly license fee plus other costs and interest.

    **Answer to No. 20:**

    The Tower Licenses speak for themselves and therefore no response is required.

21. The name of each tower and the date each Tower License was signed is described below:
    a. The "Bowker" Tower, dated July 28, 2010.

      b.  The "Larue" Tower, dated July 30, 2010;
      c.  The "Chesterville I-71," dated July 30, 2010;
      d.  The "Bloomingdale (OH)" Tower, dated August 9, 2010;
      e.  The "Millwood OH" Tower, dated August 18, 2010;
      f.  The "Gilmore OH" Tower, dated August 17, 2010;
      g.  The "Lynnport" Tower, dated August 9, 2010;
      h.  The "Newport PA" Tower, dated August 9, 2010;
      i.  The "MCI Sparta NJ" Tower, dated August 9, 2010.

**Answer to No. 21:**

Admitted.

22. Each Tower License contains a "Default" clause, which provides, among other things, that "any failure of the Licensee to pay the Monthly Fee, or any other charge for which Licensee has the responsibility of payment under this Agreement, within 10 Business Days of the date following written notice to Licensee from Licensor…of such delinquency" constitutes a default.

**Answer to No. 22:**

The Tower Licenses speaks for themselves, and therefore no response is required.

**Rooftop License**

23. Global Tower is an entity that assists federally licensed providers of wireless communications services to identify and acquire appropriate sites for the development and construction of wireless communications towers.

**Answer to No. 23:**

Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 23 of the Complaint.

24. On August 23, 2010, Defendant AB Services, another entity controlled by Defendant Pilosov, entered into a Rooftop License Agreement ("Rooftop License") whereby Plaintiff Global Tower was the beneficiary of certain monetary obligations under the Rooftop License. Pilosov executed the Rooftop License on behalf of AB Services.

**Answer to No. 24:**

The Rooftop License speaks for itself, and therefore no response is required.

25. In the Rooftop License, Defendant AB Services was granted a non-exclusive license and right to use certain areas, including the roof, of the building located at 200 East

Randolph Street, Chicago, Illinois for the transmission and reception of communications signals pursuant to certain radio transmitting and receiving dish antenna.

**Answer to No. 25:**

The Rooftop License speaks for itself, and therefore no response is required.

26. The Rooftop License includes a section entitled "Event of Default," which defines a default as, among other things, the Licensee's failure "to pay when due any License Fee or other monetary obligation…to be paid by Licensee within ten (10) days after the date same is due…"

**Answer to No. 26:**

The Rooftop License speaks for itself, and therefore no response is required.

27. On April 27, 2011, the New York Secretary of State dissolved Defendant Pilosoft by proclamation. Accordingly, the New York Department of State business records website presently lists Pilosoft as "inactive."

**Answer to No. 27:**

Admitted.

**The Guaranty**

28. In March of 2013, Defendant Windy Apple, another company controlled by Pilosov, executed and delivered a Guaranty of Site Agreements (the "Guaranty") to American Towers. Pilosov executed the Guaranty on behalf of Windy Apple.

**Answer to No. 28:**

The Guaranty speaks for itself, and therefore no response is required.

29.  In the Guaranty, Windy Apple "unconditionally, irrevocably and absolutely" guaranteed to American Towers the "full, prompt and complete" payment by AB Services under the Tower Licenses.

**Answer to No. 29:**

The Guaranty and Tower Licenses speak for themselves, and therefore no response is required.

30. Windy Apple delivered the Guaranty to American Towers to induce American Towers to allow Pilosoft to assign its rights under the Tower Licenses to AB Services.

**Answer to No. 30:**

Denied.

**The Assignment**

31. On May 1, 2013, Pilosoft and AB Services entered into an Assignment and Assumption of Lease and Consent Agreement (the "Assignment Agreement"), whereby Pilosoft "transfer[ed], assign[ed] and set[] over to [AB Services] all right, title and interest" of Pilosoft to the Tower Licenses, and AB Services accepted the assignment and agreed "to make all future payments as they come due under the [Tower Licenses]…" Pilosov executed the Assignment Agreement on behalf of both Pilosoft (as President) and AB Services (as Managing Principal).

**Answer to No. 31:**

The Assignment Agreement and the Tower Licenses speaks for themselves and therefore no response is required.

32. On May 15, 2013, relying on the Guaranty, American Towers executed a Consent to Assignments agreement (the "Consent"), permitting Pilosoft to assign the Tower Licenses to AB Services.

**Answer to No. 32:**

Admit that American Towers executed an agreement permitting Pilosoft to assign the Tower Licenses to AB Services. Deny that Plaintiffs relied on the Guaranty before executing the agreement.

33. Pilosoft then assigned its rights under the Tower Licenses to AB Services.

**Answer to No. 33:**

Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required the allegation is admitted.

**<u>The Defaults</u>**

34. On or about March 1, 2014, AB Services defaulted under the terms of the Rooftop License by failing to pay the amounts due and owing to Global Tower.

    **<u>Answer to No. 34:</u>**

    Paragraph 34 contains legal conclusions to which no response is required.

35. On or about April 1, 2014, AB Services defaulted under the terms of the Tower Licenses by failing to pay the amounts due and owing to American Towers.

    **<u>Answer to No. 35:</u>**

    Paragraph 35 contains legal conclusions to which no response is required.

36. On February 17, 2015, American Towers sent a Notice of Default letter to AB Services, c/o Defendant Pilosov, alerting AB Services and Pilosov that AB Services was in default under the Licenses. The Notice of Default demanded payment from AB Services of amounts past due.

    **<u>Answer to No. 36:</u>**

    Admitted.

37. Neither AB Services nor Pilosov responded to the Notice of Default in any way.

    **<u>Answer to No. 37:</u>**

    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

38. On March 17, 2016, American Towers and Global Tower, through their attorneys, sent a Demand Letter to Pilosoft, AB Services and Windy Apple – with attention to Pilosov on behalf of each entity – demanding payment of the amounts due and owning under the Tower Licenses, the Rooftop License and the Guaranty within 10 business days of the date of the letter.

    **<u>Answer to No. 38:</u>**

Admitted.

39. Neither Pilosoft, AB Services, Windy Apple nor Pilosov responded to the Demand Letter by remitting the payment demanded therein.

**Answer to No. 39:**

Admitted.

40. In fact, none of these Defendants have responded in any way, and as such their default under the Tower Licenses, the Rooftop License, and the Guaranty is continuing.

**Answer to No. 40:**

Admitted to the extent that Defendants have not responded. Whether Defendants are

in default is a legal conclusion to which no response is required.

**FIRST CAUSE OF ACTION:
BREACH OF CONTRACT (TOWER LICENSES)
AB SERVICES, PILOSOFT**

41. Plaintiffs restate, reallege and incorporate by reference all previous paragraphs.

**Answer to No. 41:**

Defendants restate, reallege and incorporate by reference all previous answers.

42. Between July 28, 2010 and August 18, 2010, American Towers and Pilosoft entered into the Tower Licenses, nine separate, valid and binding contracts.

**Answer to No. 42:**

The Tower Licenses speak for themselves and therefore no response is required.

43. On May 15, 2013, American Towers and AB Services executed the Consent, in which American Towers agreed to allow Pilosoft to assign its rights under the Tower Licenses to AB Services.

**Answer to No. 43:**

The Assignment Agreement speaks for itself and therefore no response is required.

44. By this agreement, AB Services became the licensee under the Tower Licenses and assumed all rights and obligations under those agreements.

**Answer to No. 44:**

Paragraph 44 contains legal conclusions to which no response is required.

45. AB Services breached the Tower Licenses by failing to pay money due and owing both when due, and when demanded by American Towers.

**Answer to No. 45:**

Paragraph 45 contains legal conclusions to which no response is required.

46. By virtue of Pilosov's control over both AB Services and Pilosoft, his execution of the Tower Licenses on Pilosoft's behalf, and his execution of the Assignment on behalf of both Pilosoft and AB Services, AB Services and Pilosoft are alter ego entities so that AB Services' breach of the Tower Licenses can be imputed to Pilosoft, the original signatory to the Tower Licenses.

**Answer to No. 46:**

Denied.

47. American Towers has performed all of its obligations under the Tower Licenses.

**Answer to No. 47:**

Paragraph 47 contains legal conclusions to which no response is required.

48. As a result of AB Services and Pilosoft's breach of the Tower Licenses, American Towers has been damaged in an amount to be determined at trial, but believed to be at least $261,976.80, exclusive of additional interest, costs and attorneys' fees.

**Answer to No. 48:**

Paragraph 48 contains legal conclusions to which no response is required.

## SECOND CAUSE OF ACTION:
## BREACH OF CONTRACT (ROOFTOP LICENSE)
## AB SERVICES

49. On August 23, 2010, AB Services executed the Rooftop License, a valid and binding contract to which Global Towers was a valid third-party beneficiary.

**Answer to No. 49:**

The Rooftop License speaks for itself and therefore no response is required.

50. AB Services breached the Rooftop License by failing to pay money due and owing both when due, and when demanded by Global Tower.

    **Answer to No. 50:**

    Paragraph 50 contains legal conclusions to which no response is required.

51. Global Tower has performed all of its obligations under the Rooftop License.

    **Answer to No. 51:**

    Paragraph 51 contains legal conclusions to which no response is required.

52. As a result of AB Services' breach of the Rooftop License, Global Tower has been damaged in an amount to be determined at trial, but believed to be at least $87,785.16, exclusive of additional interest, costs and attorneys' fees.

    **Answer to No. 52:**

    Paragraph 52 contains legal conclusions to which no response is required.

### THIRD CAUSE OF ACTION: BREACH OF CONTRACT (GUARANTY) WINDY APPLE

53. Plaintiffs restate, reallege and incorporate by reference all previous paragraphs.

    **Answer to No. 53:**

    Defendants restate, reallege and incorporate by reference all previous answers.

54. On March 31, 2013, American Towers and Windy Apple Technologies LLC entered into the Guaranty, a valid and binding contract.

    **Answer to No. 54:**

    The Guaranty speaks for itself and therefore no response is required.

55. Under the Guaranty, Windy Apple agreed to cure any defaults by AB Services under the Tower Licenses.

    **Answer to No. 55:**

    Paragraph 55 contains legal conclusions to which no response is required.

56. AB Services defaulted under the Tower Licenses by failing to pay money due an owing both when due, and when demanded by American Towers.

    **Answer to No. 56:**

    Paragraph 56 contains legal conclusions to which no response is required.

57. Windy Apple has not cured AB Services' default under the Tower Licenses, and has therefore breached the Guaranty.

    **Answer to No. 57:**

    Paragraph 57 contains legal conclusions to which no response is required.

58. Plaintiffs have performed all of their obligations under the Guaranty.

    **Answer to No. 58:**

    Paragraph 58 contains legal conclusions to which no response is required.

59. As a result of the Windy Apple's breach of the Guaranty, American Towers has been damaged in an amount to be determined at trial, but believed to be at least $261,976.80, exclusive of additional interest, costs and attorneys' fees.

    **Answer to No. 59:**

    Paragraph 59 contains legal conclusions to which no response is required.

### FOURTH CAUSE OF ACTION: BREACH OF CONTRACT (TOWER LICENSES, ROOFTOP LICENSE, GUARANTY) PILOSOV

60. Plaintiffs restate, reallege and incorporate by reference all previous paragraphs.

    **Answer to No. 60:**

    Defendants restate, reallege and incorporate by reference all previous answers.

61. Pilosov executed the Tower Licenses, the Rooftop License, and the Guaranty in his role as President and/or Owner of Pilosoft, Managing Principal of AB Services, and President of Windy Apple.

    **Answer to No. 61:**

Admitted.

62. On information and belief, Pilosov exercised complete control over Pilosoft, AB Services and Windy Apple, so much so that he did not view these companies as separate entities.

   **Answer to No. 62:**

   Denied.

63. Due to this complete control, the breaches of the Tower Licenses, the Rooftop License, and the Guaranty committed by AB Services, Windy Apple and Pilosoft should be imputed to Pilosov, personally.

   **Answer to No. 63:**

   Denied.

64. As a result of Pilosov's breach of the Tower Licenses, the Rooftop License, and the Guaranty, American Towers and Global Tower have been damaged in an amount to be determined at trial, but believed to be at least $349,761.93, exclusive of additional interest, costs and attorneys' fees.

   **Answer to No. 64:**

   Paragraph 64 contains legal conclusions to which no response is required.

## **AFFIRMATIVE DEFENSES**

As for Defendants' affirmative defenses, they assert and state as follows:

### **First Affirmative Defense**

1. The Complaint fails to state causes of action upon which relief may be granted.

### **Second Affirmative Defense**

2. Plaintiffs' have failed to join a required party under Fed. R. Civ. P. 19.

### **Third Affirmative Defense**

3. Plaintiffs' claims are barred by the equitable doctrines of estoppel, unclean hands and laches.

### Fourth Affirmative Defense

4. Plaintiffs' claims are barred by the equitable doctrines of waiver, consent and acquiescence.

### Fifth Affirmative Defense

5. This Court lacks subject matter jurisdiction and this Court is the wrong venue for this action.

### Sixth Affirmative Defense

6. This Court lacks personal jurisdiction over Defendants.

### Seventh Affirmative Defense

7. Plaintiffs' claims are barred by the Statute of Limitations and the Statute of Frauds.

### Eighth Affirmative Defense

8. Plaintiffs' claims are barred because they have received payment.

### Ninth Affirmative Defense

9. Plaintiffs have failed to mitigate their damages.

### Tenth Affirmative Defense

10. Plaintiffs' claims are barred to the extent that they have forfeited or abandoned their rights.

### Eleventh Affirmative Defense

11. Plaintiffs' claims are barred, in whole or in part, because Plaintiffs seek to recover an unenforceable contractual penalty.

### Twelfth Affirmative Defense

12. Plaintiffs' claims are barred, in whole or in part, because Defendants' conduct was in good faith and with non-willful intent, at all times.

### Thirteenth Affirmative Defense

13. Defendants' actions were ratified by Plaintiff.

### Fourteenth Affirmative Defense

14. Defendants have been released from their contractual obligations.


WHEREFORE Defendants ask this Court to dismiss the Complaint and enter judgment in favor of Defendants.


Dated: August 29, 2016

 

TOR EKELAND, P.C.

_____
Adam Elewa (AE1905)
Tor Ekeland (TE5608)
195 Plymouth Street, 5th Floor
Brooklyn, NY 11201
Tel: 516-554-1080
Fax: 718-504-5417
adam@torekeland.com
tor@torekeland.com
*Attorneys for Defendants*