Tor Ekeland
Frederic B. Jennings
Tor Ekeland, P.C.
43 W. 43rd St., Suite 50
New York, NY 10035
Tel: 718.737.7264
Fax: 718.504.5417
tor@torekeland.com
fred@torekeland.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN TOWERS, INC. GLOBAL TOWER ASSETS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PILOSOFT INC., AB SERVICES LLC, WINDY APPLE TECHNOLOGIES LLC, ALEKSANDR PILOSOV a/k/a ALEX PILOSOV. <br><br> Defendants. | 1:16-CV-04997 (NRB) <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
IN OPPOSITION TO THE MOTION TO DISMISS**

**Introduction**

This litigation arises over a series of business transactions entered into in good faith between sophisticated business actors. Plaintiffs American Towers, Inc. ("ATC") and Global Tower Assets, LLC ("Global Tower") offer no substantial arguments against granting Defendants' Motion to Dismiss. Neither Plaintiffs' claims against all defendants other than AB Services, LLC nor their attempts to pierce the corporate veil satisfy the pleading standards of Fed. R. Civ. P. 8 or 9(b). Where their pleadings are deficient, Plaintiffs are "not entitled to discovery, cabined or otherwise." *Ashcroft v. Iqbal*, 556 U.S. 662, 686, 129 S. Ct. 1937, 1954, 173 L. Ed. 2d 868 (2009).

The failure of Mr. Pilosov's businesses were the result of changing market conditions, not misrepresentation, fraud, or self-dealing. Plaintiffs offer no plausible claims to the contrary, and thus cannot meet the elements required to pierce the corporate veil.

Plaintiffs' claims are an attempt to renegotiate a contract after the fact. Plaintiff could easily have demanded a personal guarantee from Mr. Pilosov while negotiating the terms of any of the contracts, but each time chose not to do so. Now, Plaintiff asks this Court to remedy its miscalculation by arguing a non-existent fraud. The Court should reject this attempt to renegotiate the contract through litigation.

Additionally, Plaintiffs omit at least one necessary party, without which complete relief cannot be granted. Moreover, the contracts' unambiguous language is within the Court's sound discretion to determine, and that the parties may now disagree on the meaning of certain sections does not render the contracts ambiguous or unclear.

Therefore, Plaintiff's complaint should be dismissed as insufficient as a matter of law, as there are no substantial facts in dispute regarding the contracts, and the terms of those contracts clearly indicate the intents of the parties at the time of signing.

## FACTS

In 2009, Mr. Pilosov designed a high-speed microwave communication network to facilitate trading between the markets in Chicago and New York. In 2010, Mr. Pilosov created AB Services to implement and maintain the microwave network he designed. The network became operational in 2010 and was the first long-haul low-latency microwave network in the United States. In 2012, Mr. Pilosov created Windy Apple Technologies to market the microwave network. Plaintiffs executed, or were involved with, a series of contracts related to the microwave network (the "Tower Licenses"). Defendants party to these contracts were AB Services, Pilosoft Inc., and Windy Apple Technologies (collectively, the "Corporate Defendants").

On May 1, 2013, the Tower Licenses identified in Plaintiffs' Complaint were transferred from Pilosoft, Inc., to AB Services. (Dkt. 36-4, Ex. D, Transfer Agreement; *see also* Compl., ¶ 21). On May 15, 2013, ATC consented to this transfer. (Compl., ¶ 32). As their only condition, Plaintiffs required Defendants to affirm, "for benefit of landlord," that Windy Apple and AB Services were owned by same person (Dkt. 36-4, Ex. D, ¶ 4 at p. 3).

All nine of the Tower Licenses identified by Plaintiffs in their Complaint were entered into on various dates in 2010, prior to the Guaranty agreement. (Compl., ¶ 21). At no point in time did Plaintiffs, sophisticated businesses experienced in tower leases, contract negotiation, and credit arrangements, ask for a personal guarantee of any sort from Mr. Pilosov.

In 2014, during the time period when Plaintiffs allege the defaults occurred (Compl., ¶¶ 34 - 35), Windy Apple Technologies and AB Services lost a number of key customers as better funded competitors established similar services with faster speeds. In December 2014, both Windy Apple Technologies and AB Services were forced to shut down due to mounting financial difficulties.

On June 27, 2016, Plaintiffs filed a Complaint in the above captioned matter, followed by Defendants' Answer on August 29, 2016. On November 23, 2016, Defendants filed a letter motion to dismiss the claims against Pilosoft Inc., Windy Apple Technologies, and Mr. Pilosov.[1] Plaintiffs filed a response on December 22, 2016.

## Argument

### 1. Plaintiffs Omit a Necessary Third Party, Yet Claim Amounts Due to That Third Party and Perhaps Others

Plaintiff asserts that "Courts in this Circuit and around the country" reject the notion that original contracting parties must necessarily be joined. This misconstrues the issue and miscasts the standard. Courts take a flexible approach to determining which parties are necessary for a just resolution, because the question of necessity is fact-intensive. *See CP Solutions PTE, Ltd. v. Gen. Electric Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam) (internal citation omitted). The Second Circuit uses a four-factor test to determine whether a party is necessary. *See id*. The third factor, most relevant here, weighs whether "a judgment … in the [omitted party's] absence

---

[1] Plaintiffs claim certain facts and arguments within the letter motion to dismiss are beyond the bounds of the Complaint and Answer. *See* Plaintiffs' Response, Dkt. 37, at p. 12. While they do not specify which facts or arguments are at issue, certain other facts may be considered in a motion to dismiss. For example, courts routinely take judicial notice of the fact – if not the truth of – other publicly filed documents. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006)). At most, outside facts would convert the motion to dismiss to a summary judgment motion, with notice to the parties. *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008).

would be adequate." *Id*. Here, any judgment rendered without Jones Lang LaSalle Americas LLC ("JLL") as a party would be inadequate.

JLL was the licensor and direct payee under the Global Tower contract with AB Services, LLC. (*See* Dkt. 36-1, Ex. A). Typical of rooftop tower contracts, Global Tower has a claim only to a portion of the rent received by JLL, in an amount not specified in any contract between Plaintiffs and Defendants. Even if Global Tower is a third-party beneficiary, they do not stand in JLL's shoes. They are a third-party beneficiary, at most, only to "certain of the monetary obligations" due to JLL. *See* Dkt. 36-1, Ex. A, at p. 25, ¶ 35(b)(ii). Plaintiffs cannot adequately represent JLL's interest when their own interest as third-party beneficiaries is limited to an unknown portion.[2]

## 2. Piercing the Corporate Veil is Unjustified Under Either Nevada or New York Law

Nothing in the Plaintiff's complaint merits casting aside the corporate veil. "[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) (collecting cases). Nevada law applies a similar standard. *See* Nev. Rev. Stat. § 78.747(2)(a-c) (permitting alter-ego liability only if "(a) [t]he corporation is influenced and governed by the stockholder, director or officer; (b) [t]here is such unity of interest and ownership that the corporation and the stockholder… are

---

[2] Plaintiffs assert the original promisees, if added as co-plaintiffs, would "likely" be able to be joined without depriving the Court of subject matter jurisdiction. This assertion is premature. Additional undisclosed, and perhaps necessary, parties may exist, based on other litigation related to Plaintiffs' tower ownership. *See, e.g. Precht v. Glob. Tower LLC*, No. 2:14-CV-743, 2016 WL 6038030, at *1 (W.D. La. Oct. 13, 2016) (listing several additional defendant corporations, and a lack of clarity around the corporate defendants' identities and relationships in a personal injury action against Plaintiffs); *Prosser v. Glob. Tower, LLC*, 3:13-CV-200 (S.D. Ill., 2013); *cf.* Plaintiffs' Rule 7.1 Disclosures, Dkt. 23.

inseparable from each other; and (c) [a]dherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice."); *see also Volvo Const. Equip. Rents, Inc. v. NRL Rentals, LLC*, 614 F. App'x 876, 878 (9th Cir. 2015) (holding that each element of N.R.S. § 78.747(2) must be shown before alter-ego liability may apply). Plaintiffs do not plead facts sufficient to show "fraud or manifest injustice" under N.R.S. § 78.747 or a "fraud or wrong" under New York's standard with a proximate causal link to Mr. Pilosov's ownership of the Corporate Defendants.

### a. Plaintiffs Demonstrate No "Manifest Injustice" Under Nevada's Veil Piercing Elements

Plaintiffs correctly state the elements for piercing the corporate veil under Nevada state law. However, they do not specify what injustice occurred to satisfy the third element, nor was any pled in their complaint. Their response, relying on factually distinguishable cases which predate *Twombly* and *Iqbal*, is insufficient to rectify this failure.[3] "The corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.*, 85 Nev. 219, 220, 452 P.2d 916, 916 (1969) (citing *Nevada Tax Comm'n v. Hicks*, 73 Nev. 115, 310 P.2d 852 (1957)). In substance, Nevada's factors for determining if a manifest injustice would occur are similar to those in New York. *See Ecklund v. Nevada Wholesale Lumber Co.*, 93 Nev. 196, 199, 562 P.2d 479, 480 (1977) (declining to pierce the veil where there was no showing of undercapitalization, the business ran successfully for many years, and there was no misrepresentation to induce reliance on the

---

[3] *LFC Marketing Group, Inc. v. Loomis* allowed reverse piercing with a corporate structure clearly designed to frustrate creditors, where all entities used a shared account. 8 P.3d 841, 905-06 (Nev. 2000). *Lorenz v. Beltio, Ltd.* allowed piercing where there was no actual separate business operation, and fully intermingled funds. 114 Nev. 795, 808, 963 P.2d 488, 497 (1998). *Soule v. High Rock Holding, LLC*, involved reverse piercing in a bankruptcy case, where different pleading standards apply. 514 B.R. 626, 635 (D. Nev. 2014). *House of Brussels Chocolates, Inc. v. Whittington* involved a much more complex corporate form, and a CEO's attempt to recover shares due under a loan promise. 124 Nev. 1475, 238 P.3d 820 (2008).

president's personal credit.). While Nevada's law may support a finding of unity of interest, the third necessary element for piercing the veil, an injustice, is not present, and not pled, here.

### b. Plaintiffs Fail to Meet New York's "Fraud or Wrong" Element for Veil Piercing

Plaintiffs do not sufficiently plead Mr. Pilosov's "complete control" of the corporation, essential to New York's test. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991). Mere sole ownership "standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required" *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141–42 (1993); *cf. In re Verestar, Inc.*, 343 B.R. 444, 464-65 (Bankr. S.D.N.Y. 2006) (finding the veil could be pierced where Verestar was a "mere instrumentality," fully financially dependent on ATC, who had stripped Verestar's assets).

Rather, multiple factors are reviewed by the Court in determining whether complete domination existed:

> "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence…, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership…, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991).

The totality of the evidence should be considered to determine whether disregarding the corporate form to "protect those who deal with the corporation" outweighs the policy of

6

presuming "corporate independence and limited shareholder liability." *Id*. Plaintiffs' "'purely conclusory'" recitations of factors "are insufficient to warrant consideration." *Savage v. Galaxy Media & Mktg. Corp.*, No. 11 CIV. 6791 NRB, 2012 WL 2681423, at *5 (S.D.N.Y. July 5, 2012), *aff'd,* 526 F. App'x 102 (2d Cir. 2013).

At all times, Plaintiffs were aware of Mr. Pilosov's role in the corporate entities in question, never sought his personal guarantee for any of the contracts that form the subject of this litigation, and specifically sought sole ownership for the landlord's benefit. *See* (Dkt. 36-4, Ex. D, ¶ 4 at p. 3). Plaintiff fails in its attempt to bolster fraud allegations on actions it was aware of, approved of, and sought for its benefit. *See* § 4, below.

Even where complete control is found, it must also proximately cause the alleged injury. *See Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 142, 623 N.E.2d 1157, 1161 (1993). The mere possibility of an injury is not sufficient. *Savage v. Galaxy Media & Mktg. Corp.* at *7 (S.D.N.Y. July 5, 2012), *aff'd,* 526 F. App'x 102 (2d Cir. 2013). Even if Plaintiffs could show complete control under the above factors, they did not plead and cannot show any plausible proximate causal link between that control and the alleged injury.

3. **Plaintiffs' Vague and Implausible "Scheme" Fails to Satisfy *Twombly* and *Iqbal*'s Pleading Standards**

Plaintiffs' response vaguely alleges a "scheme" by the Defendants and Mr. Pilosov, but this fails to satisfy the pleading standards. (*See* Plaintiffs' Response, Dkt. 37, at p. 21). Their allegations are conclusory, and their alleged "scheme" implausible. A complaint must contain "enough facts to state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual claims are plausible if they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

7

662, 678 (2009). This standard is even higher for allegations of fraud, where the circumstances must be "state[d] with particularity." *See* Fed. R. Civ. P. 9(b).

Even were it in their complaint, Plaintiffs' alleged scheme is implausible considering the relevant timeline of events. Pilosoft, Inc. was founded in 1998. (Dkt. 32, p. 5). The Tower Licenses and Rooftop License were entered into in 2010 (*See* Complaint, Dkt. 1, ¶¶ 19 & 24 at p. 5), roughly three years passed where these contracts were performed on without any alleged incident or change in terms[4], the Guaranty was entered into and consented to by ATC in spring 2013 (*See* Dkt. 1, ¶¶ 28-32 at pp. 6-7), and no default is alleged until a full year later in spring 2014 (*See* Dkt. 1, ¶¶ 34 & 35 at p. 7); no notice of default was sent to Defendants until February, 2015 (*See* Dkt. 1, ¶ 36 at p. 7). This timeline does not support Plaintiffs' conclusory "scheme" under either the heightened standard of F.R.C.P. 9(b) or the plausibility standard of *Twombly* and *Iqbal*. 550 U.S. at 570 (2007); 556 U.S. at 678 (2009).

Under Nevada or New York law, some allegation of misconduct, manifest injustice, or fraud must be plausibly alleged to justify piercing the corporate veil. Here, no "scheme" plausibly existed beyond the usual course of business described in the contracts.

4. **Plaintiffs Should be Equitably Estopped from Disputing the Assignment's Validity**

Plaintiff bases the crux of its arguments for alter-ego liability and for piercing the corporate veil on the fact that Mr. Pilosov was the sole owner of the Corporate Defendants. However, it was Plaintiffs themselves who benefitted from this sole ownership, and requested defendant to affirm so. (*See* Dkt. 36-4, Ex. D, ¶ 4, "Assignor and Assignee represent for the benefit of Landlord that they are owned by the same natural person"). It would be unjust to simultaneously induce and indict this structural decision.

---

[4] Plaintiffs allege Pilosoft, Inc. was dissolved by proclamation in April 2011, but do not allege that this inhibited or altered their contracts in any way. *See* Complaint, Dkt. 1, ¶ 27.

8

Similarly, ATC was at all times aware of, and consented to, the assignment of Pilosoft, Inc. to AB Services, LLC. (*See* Dkt. 36-4, Assignment Agreement). They cannot now claim it a wrongful or ineffective assignment. Here, all assets and liabilities of Pilosoft, Inc. transferred to AB Services, LLC, and no claim exists against Pilosoft, Inc. To the extent Plaintiffs rely on Mr. Pilosov's sole ownership for their claims, or the invalidity of an assignment they fully approved, they should be equitably estopped. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999-1000 (2d Cir. 1996) ("well-settled principles of estoppel dictate that where a party seeks the benefits of a contract, it cannot disaffirm its burdens").

5. **Where The Contract Terms are Clear, Unambiguous, and Made Between Sophisticated Parties, The Court Need Not Look Beyond The Contracts' Terms**

This is a simple dispute over a relatively simple set of contracts. Plaintiff argues that the parties' disagreement over certain terms, such as those in the Global Towers guaranty, are sufficient to justify some discovery, but this is a poor indicator of ambiguity. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation … unless each is a 'reasonable' interpretation." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (internal citations omitted); *see also Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569–70, 780 N.E.2d 166, 171 (2002) ("if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity"). The subject contracts' language is plain, and typical of rental contracts.

"[W]here a 'contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.'" *Oquendo v. CCC Terek*, 111 F. Supp. 3d 389, 412 (S.D.N.Y. 2015). Here, the contract language

9

is clear, and provides the best window into the parties' intents at the time of the contract. There is no need to consider extrinsic evidence.

### 6. No Set of Facts Can Remedy the Claims Against Pilosoft, Inc., and They Should be Dismissed With Prejudice

Any liability based on the Tower Agreements that would have lay with Pilosoft, Inc. was transferred to AB Services LLC under an assignment that Plaintiffs have consented to, in writing. *See* § 4, above. These claims should be dismissed with prejudice.

## CONCLUSION

No arguments in the Plaintiffs' Response rebut the points of Defendants' Motion to Dismiss, and no discovery is warranted on deficient pleadings. For the reasons stated above and in the Defendants' Motion to Dismiss, the claims against Defendants and Mr. Pilosov should be dismissed.

Dated: January 6, 2017
New York, New York

TOR EKELAND, P.C.

*/s/ Frederic B. Jennings*
Tor Ekeland (TE5608)
Frederic B. Jennings (FJ7723)
43 W 43rd Street, Suite 50
New York, NY 10035
Tel: 718-737-7264
Fax: 718-504-5417
tor@torekeland.com
fred@torekeland.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

       I, FREDERIC B. JENNINGS, an attorney duly admitted to practice before the Courts of the State of New York and the Southern District of New York and not a party to the above-captioned action, hereby affirms the following to be true, under penalty of perjury:

1. I am over 18 years of age and am an attorney with Tor Ekeland, P.C., counsel for Plaintiff.

2. On January 6, 2017, I filed a true and correct copy of the above Reply via ECF, causing it to be served electronically on counsel for Plaintiffs.

Date: January 6, 2017                By: */s/     Frederic B. Jennings*
                                             Frederic B. Jennings (FJ7723)
                                             43 W 43rd Street, Suite 50
                                             New York, NY 10035
                                             Tel: 718-737-7264
                                             Fax: 718-504-5417
                                             fred@torekeland.com